UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MEDICAL PROTECTIVE COMPANY                                      Plaintiff

v.                                                              Civil Action No. 3:20-CV-763-RGJ

COREY A. KELLEY &                                               Defendants
TERRA M. WILSON

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Plaintiff Medical Protective Company ("MedPro") moved for judgment on the pleadings on its amended complaint for declaratory judgment. [DE 21]. Defendants Corey A. Kelley ("Kelley") and Terra M. Wilson ("Wilson" together with Kelley, "Defendants") responded [DE 22; DE 23] and MedPro replied [DE 24]. This matter is ripe. For the reasons below, the Court will **GRANT** MedPro's Motion for Judgment on the Pleadings [DE 21].

I.   BACKGROUND

Cleanse Clinic PSC ("Clinic") is a drug-treatment center in Louisville, KY. [DE 1 at 1]. Kelley was hired by Clinic in December 2017 as a drug counselor. [DE 21 at 211–12]. Kelley was assigned as Wilson's counselor in 2018. [*Id.* at 212]. While Kelley was Wilson's counselor, the two began a sexual relationship. [*Id.*]. Although Kelley asserts that the relationship was consensual, Wilson contends otherwise and argues that Kelley engaged in sexual abuse, emotional abuse, exploitation, sexual assault and battery, sexual harassment, false imprisonment, invasion of privacy, intentional infliction of emotional distress, wanton and reckless conduct, lack of consent, and fraud. [*Id.*]. Wilson also made claims against Clinic and its owner for negligent hiring, training, and supervision and for failing to protect her from Kelley. [*Id.*]. Clinic terminated Kelley in December 2019 when it learned of Kelley's relationship with Wilson. [*Id.*].

Clinic was insured under a policy issued by MedPro that covers its insured for claims arising from rendering or failing to render "professional services" ("Policy"). [*Id.* at 210]. The relevant terms of the Policy are as follows:

> A. In any claim based upon professional services rendered during the term of this policy by the Insured, or any other person for whose acts or omissions the Insured is legally responsible, in the practice of the Insured's profession as hereinafter limited and defined.
>
> …
>
> …The phrase "professional services" shall only include the following:
>
> (a) the rendering of medical, surgical, dental or nursing services to a patient and the provision of medical examinations, opinions, or consultations regarding a person's medical condition within the Insured's practice as a licensed health care provider…

[DE 1-1 at 18]. The Policy excludes coverage for "any claim for damages if said damages are in consequence of the performance of a criminal act, willful tort or sexual act." [DE 1 at 3].

Wilson initiated civil action 20-CI-5510 in Jefferson Circuit Court on September 24, 2020, against Clinic, Asad Ismail, Kelley, and unknown employees or agents of Clinic ("State Court Action"). [DE 22 at 241]. The State Court Action triggered the terms of the Policy, pursuant to which this action was initiated by MedPro on November 12, 2020. [DE 1]. The Court held, pursuant to 28 U.S.C. § 2201 and *Grand Trunk W.R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984), that it may exercise jurisdiction over this declaratory judgment action. [DE 14 at 195]. MedPro agreed to provide a defense to Clinic and Kelley in the State Court Action under a reservation of rights. [DE 21 at 213]. On October 27, 2021, Wilson filed her Second Amended Complaint in the State Court Action. [DE 22 at 242]. The Second Amended Complaint changes allegations from "assault and/or battery and abuse" to "exploitation" or "exploit trust and dependency of a client" in conformity with 201 KAR Code of Ethics. [DE 23 at 283].

As the Policy relates to Kelley, MedPro contends that (1) the claims asserted by Wilson against Kelley in the State Court Action do not constitute "professional services" as defined in the Policy; and (2) even if Kelley's alleged misconduct is found to constitute "professional services" or was within the scope of his duties at Clinic, coverage for all claims against Kelley is excluded under the Policy's exclusion of damages resulting from "willful tort or sexual act." [DE 21 at 213]. MedPro filed its Motion for Judgment on the Pleadings to determine whether it has a duty to defend Kelley in the State Court Action. [*Id.* at 214].

## II.   STANDARD

Federal Rule of Civil Procedure 12(c) provides that "a party may move for judgment on the pleadings." A court is to apply the same standard to a motion for judgment on pleadings that it applies to a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Warrior Sports, Inc. v. NCAA*, 623 F.3d 281, 284 (6th Cir. 2010) (citing *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001)). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). A motion for judgment on the pleadings may be "granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.* (quoting *Paskvan v. City of Cleveland Civ. Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

Although a court's decision on a motion for judgment on the pleadings rests primarily on the allegations of the complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint also may be taken into account." *Barany-Snyder*

3

*v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)) (internal quotation marks omitted). The Sixth Circuit has recognized that "if a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014) (citation omitted). "Such public records that a court may consider include documents from other court proceedings." *Watermark Senior Living Ret. Cmtys., Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 425–26 (6th Cir. 2018) (citing *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010)).

### III.   ANALYSIS

MedPro first argues that Kelley's actions do not constitute "professional services" under the Policy, and as such, MedPro has no duty to defend or indemnify Kelley. [DE 21 at 216]. If the Court holds that Kelley's actions are considered professional services, then MedPro contends that coverage is excluded under the Policy. [*Id.* at 218]. In response, Kelley and Wilson argue that the Second Amended Complaint in the State Court Action moots MedPro's argument. [DE 22 at 243; DE 23 at 283]. They also argue that Kelley's actions constitute professional services and that MedPro has a continuing duty to defend Kelley. [DE 22 at 245, 250; DE 23 at 283].

#### A. "Professional Services" Under the MedPro Policy

MedPro argues that it does not have a duty to defend or indemnify Kelley because Kelley's alleged conduct does not constitute "professional services" under the Policy. [DE 21 at 216]. Kelley and Wilson contend that Kelley's actions do constitute "professional services" and that the Second Amended Complaint moots MedPro's arguments. [DE 22; DE 23].

4

As the Court has held [DE 14], determining whether MedPro has a duty to defend or indemnify is a purely legal question. *See Westfield Ins. Co. v. B.H. Green & Son, Inc.*, No. 5:11-CV-10, 2011 WL 13210095, at *2 (W.D. Ky. Oct. 17, 2011) ("This declaratory judgment action seeks a determination of whether Westfield has a duty to defend B.H Green and whether the insurance policies at issue provide coverage or benefits to B.H. Green. This is a purely legal question that will be resolved by examining the Lyon Circuit Court complaint and the insurance contracts"). The duty to defend or indemnify arises out of the insurance contract, not the complaint. *See, e.g.*, *Cincinnati Ins. Co. v. Vance*, 730 S.W.2d 521, 524 (Ky. 1987); *Thompson v. West American Ins. Co.*, 839 S.W.2d 579, 581 (Ky. App. 1992). Accordingly, the Court can rule on MedPro's Motion for Judgment on the Pleadings even if Wilson's Second Amended Complaint in the State Court Action is granted. *See Cincinnati Ins. Co.*, 730 S.W.2d at 524.

In duty-to-defend cases, "a court should determine at the outset of litigation whether an insurance company has a duty to defend its insured by comparing the *allegations in the underlying complaint* with the terms of the insurance policy." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 507 (6th Cir. 2003) (applying Kentucky law) (emphasis added). "The interpretation of an insurance contract is a matter of law." *Id.* (citing *Stone v. Ky. Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 810 (Ky. App. 2000)). "The duty to indemnify is narrower than the duty to defend because it only arises when there is an actual basis for the insured's liability to a third party." *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 269 (6th Cir. 2010). "If there is no duty to defend, then there is no duty to indemnify because the duty to defend is broader." *Nautilus Ins. Co. v. Structure Builders & Riggers Mach. Moving Div., LLC*, 784 F. Supp. 2d 767, 771 (E.D. Ky. 2011). "Under Kentucky law, the party seeking to establish coverage bears the burden of establishing that the incident at issue was within the scope of the policy." *Secura*

*Ins. Co. v. Gray Const., Inc.*, 717 F. Supp. 2d 710, 714–15 (W.D. Ky. 2010) (citing *N. Am. Acc. Ins. Co. v. White*, 80 S.W.2d 577, 578 (1935)).

Kentucky courts have held that the term "professional services" is defined as requiring an exercise of judgment or training. *See Ratliff v. Emps. Liab. Assur. Corp.*, 515 S.W.2d 225, 230 (Ky. 1974). In *Ratliff*, a hospital's insurance policy had an exclusion for injury claims arising from the "rendering or failure to render . . . any service or treatment conducive to health or of a professional nature." *Id.* at 226. The Kentucky Supreme Court held that a patient could not recover damages for a broken leg under the hospital's general liability policy because the negligence of the hospital was based on actions of nurses that related to their provision of professional services. *Id.* at 230 ("Determining whether Ratliff was capable of returning safely from the nurses' station to his bed required the nurses to exercise their expert professional ability."). The *Ratliff* court relied on *Marx v. Hartford Accident & Indem. Co.*, 157 N.W.2d 870 (Neb. 1968).[1] In *Marx*, the court held that to determine "whether a particular act is of a professional nature or a 'professional service' we must look not to the title or character of the party performing the act, but to the act itself." *Marx*, 157 N.W.2d at 872. The *Marx* court further held that professional acts or services include something more than an act flowing from mere employment but requires "the use or application of special learning or attainment of such kind." *Id.* at 871–72.

The Sixth Circuit applied these principles in *Dibeneditto v. Medical Protective Co.*, 3 F. App'x 483 (6th Cir. 2001). In *Dibeneditto*, a doctor was alleged to have "engaged in sexual innuendos, comments with sexual overtones, touchings of a sexual nature, sexual propositions and advances, comments about his sex life, and comments about the plaintiffs' anatomies and sex

---

[1] Though the *Marx* opinion was rendered by the Supreme Court of Nebraska, both state and federal courts often rely on its interpretation of the phrase "professional services" when interpreting state law. *See, e.g., Orchard, Hiltz & McCliment, Inc. v. Phoenix Ins. Co.*, 676 F. App'x 515, 520–21 n. 2 (6th Cir. 2017) (collecting cases).

lives." *Id.* at 484. The plaintiffs alleged that Dibeneditto's actions constituted sexual harassment and employment discrimination in violation of state law. *See id.* After the insurance company disclaimed coverage, the Sixth Circuit was asked to determine whether Dibeneditto's actions were considered "professional services" under the policy. *See id.* at 485. Applying *Ratliff* and *Marx*, the Sixth Circuit held that Dibeneditto's actions were not considered "professional services" because they "bore no connection to his education and training as a physician." *Id.* at 487. Dibeneditto's policy simply did not encompass his acts that provided the basis of the sexual harassment claims against him. *See id.* The Sixth Circuit noted that this was an additional risk for which Dibeneditto could have purchased additional coverage. *See id.*

Wilson alleges that Kelley exploited her by "engaging in romantic interactions, sexual interactions and harassment with [Wilson] both in-person and by electronic communication." [DE 22-1 at 264]. Interactions between Kelley and Wilson not only involved sexual acts, but also explicit photographs and text messages. [*Id.*]. Wilson also alleges Kelley threatened, intimidated, and mentally exploited her throughout their interactions. [*Id.*]. For this Order, the Court must accept the pleadings in Wilson's Second Amended Complaint as true.[2] *See JPMorgan Chase Bank, N.A.*, 510 F.3d at 581.

Kelley argues that *Dibeneditto* does not apply because it involved the relationship between an employer and former employees. [DE 22 at 248]. Yet this distinction is irrelevant. In *Dibenditto*, the Sixth Circuit focused on Dibenditto's actions, not his relationship with the plaintiffs. *See* 3 F. App'x at 487. Moreover, neither Kelley nor Wilson have cited case law indicating that *Dibeneditto* is constrained to employment relationships. Without case law to the contrary, *Dibeneditto* must apply equally here since the primary interpretation in both cases is the

---

[2] The Court will only focus on the Wilson's Second Amended Complaint in the State Court Action because it would reach the same result reviewing either complaint.

scope of insurance coverage for "professional services." *See id.* at 485.  Because the Sixth Circuit relied on interpretations of *Ratliff* and *Marx*, which required courts to ignore the title and character of the person performing the acts, the Court cannot distinguish *Dibeneditto* from this action.  *See Dibeneditto*, 3 F. App'x at 486–87.

As in *Dibeneditto*, the Court must apply the principles articulated in *Ratliff* and *Marx*.  Accordingly, the Court looks not to Kelley's title or character, "but to the act itself."  *Marx*, 157 N.W.2d at 872.  The act or acts at the center of Wilson's Second Amended Complaint revolve around Wilson and Kelley's sexual interactions and Kelley's threats and intimidation.  [DE 22-1 at 264].  Although Kelley was a counselor at Clinic, the acts at the heart of Wilson's complaints are unrelated to Kelley's education or training.  *See Dibeneditto*, 3 F. App'x at 487.  Only Kelley's acts that require "the use or application of special learning or attainment" could constitute "professional services" under the Policy and Kentucky law.  *Marx*, 157 N.W.2d at 871–72.  Therefore, the Policy does not provide coverage to Kelley because his alleged actions do not constitute "professional services."  Instead, this is an additional risk for which Kelley or Clinic could have purchased supplementary insurance coverage.  *See Dibeneditto*, 3 F. App'x at 487.

Kelley argues that the Second Amended Complaint moots MedPro's motion because it removes allegations of assault and battery and includes allegations of "exploitation" or "exploit trust and dependency of a client" under 201 KAR Code of Ethics.  [DE 22 at 243].  Although the Second Amended Complaint alters the allegations, it does not change the acts that gave rise to the State Court Action.  The Court must look at the "act itself" to determine whether coverage is afforded.  *Marx*, 157 N.W.2d at 872.  The Sixth Circuit, applying Kentucky law, has held that acts akin to Kelley's do not constitute "professional services" under insurance policies similar to the Policy.  *See Dibeneditto*, 3 F. App'x at 487.  Moreover, Kelley and Wilson have attempted to

distinguish cases cited by MedPro but have not cited case law indicating that amending a complaint to include claims under 201 KAR Code of Ethics would require an insurance company to provide coverage under similar circumstances. Accordingly, Kelley and Wilson have failed to meet their initial burden to prove that Kelley's actions constitute "professional services" and fall within the scope of the Policy. *See Secura Ins. Co.*, 717 F. Supp. 2d at 714–15. Because Kelley is not covered under the Policy, MedPro has no duty to defend or indemnify Kelley in the State Court Action. *See Nautilus Ins. Co*, 784 F. Supp. 2d at 773. The Court will not reach the merits of MedPro's additional arguments regarding the application of certain exclusions under the Policy. Therefore, MedPro's Motion for Judgment on the Pleadings [DE 21] is **GRANTED**.

### IV. CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

1. MedPro's Motion for Judgment on the Pleadings [DE 21] is **GRANTED**.

Rebecca Grady Jennings, District Judge
United States District Court

September 22, 2022